John A. Yanchunis *(pro hac vice)*
JYanchunis@forthepeople.com
Ra O. Amen *(pro hac vice)*
RAmen@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
T: (813) 223-5505
F: (813) 223-5402

Krystal Flores
KFlores@forthepeople.com
Arizona State Bar No. 034911
MORGAN & MORGAN
2355 East Camelback Road, Suite 335
Phoenix, Arizona 85016
T: (602) 735-0248
F: (602) 735-0274

*Counsel for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Lesly Lezcano**, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>**Early Warning Services**, **LLC**, **Bank of America, N.A.**, and **Bank of America Corporation**,<br><br>            Defendants. | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lesly Lezcano, individually and on behalf of all others similarly situated, by and through her counsel, brings this action against Defendants Early Warning Services, LLC ("Early Warning"), Bank of America, N.A., and Bank of America Corporation (collectively, "Bank of America") and alleges as follows:

## NATURE OF THE ACTION

1. This action is brought by Plaintiff, individually and on behalf of a class of similarly situated customers of Defendants arising from a service malfunction that occurred on January 18, 2023, on Early Warning's peer-to-peer payment network, Zelle Network® (the "Service Malfunction") and at Bank of America.

2. As a result of Defendants' negligence and other violations of law, Plaintiff and Class members were (1) prevented from accessing funds that were rightfully transferred into their accounts but then reversed (days later from the original deposit date, for some) and (2) deceived as to the true status of their account balances, both resulting in financial hardship, bounced checks and charges assessed as a result, and emotional and mental distress.

3. Plaintiff and Class Members seek damages and injunctive relief based upon Defendants' unlawful conduct described herein.

## JURISDICTION AND VENUE

4. This Court has subject matter over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Defendants.

5. This Court has personal jurisdiction over Defendants. Early Warning is headquartered in Scottsdale, Arizona, and Bank of America operates widely throughout the State and District. This Court has personal jurisdiction over all Defendants because all Defendants

conduct substantial business in this State and District and because a substantial part of the acts and omissions complained of occurred in this State and District.

6. Venue as to Defendants is proper in this District under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Early Warning maintains its principal place of business in this District. All Defendants are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District.

## **PARTIES**

7. Plaintiff Lesly Lezcano is a resident and citizen of Florida and an Early Warning and Bank of America customer.

8. Defendant Earl Warning is a Delaware corporation with its principal place of business and headquarters at 5801 N. Pima Road, Scottsdale, Arizona, 85250.

9. Bank of America, N.A. is a Delaware corporation with its principal place of business and headquarters at 100 N. Tryon Street, Charlotte, North Carolina 28255.

10. Bank of America Corporation is a Delaware corporation with its principal place of business and headquarters at 100 N. Tryon Street, Charlotte, North Carolina 28255.

11. Bank of America is a national bank providing, *inter alia*, retail banking products and services to consumers, including personal deposit accounts. Bank of America operates banking centers in all 50 states throughout the United States, including many in this District.

## **ZELLE NETWORK®**

12. Early Warning Services, LLC, is a fintech company owned by seven of the country's largest banks: Bank of America, Truist, Capital One, JPMorgan Chase, PNC Bank, U.S. Bank, and Wells Fargo.[1]

---

[1] https://web.archive.org/web/20180112160505/http://www.earlywarning.com/pdf/early-warning-corporate-overview.pdf (last accessed Jan. 18, 2023).

13. Early Warning is best known as the owner and operator of the Zelle Network® ("Zelle"), a financial services network which purportedly enables individuals to electronically transfer money from their bank account to another registered user's bank account (within the United States) using a mobile device or the website of a participating banking institution.[2]

14. Created in 2017, Zelle is a peer-to-peer payment network similar to PayPal or Venmo in that it allows users to digitally send money from their account to users at different banks.[3] Zelle has a standalone app that users can download to their smartphone.[4]

15. Zelle is now the country's most widely used money transfer service, with more than double Venmo's payment volumes.[5]

16. Users transferred $187 billion in 2019 using Zelle, an increase of 57% since 2018.[6]

17. Zelle advertises and represents that money transferred with Zelle "will move directly into your bank account associated with your profile, *typically within minutes*."[7]

18. The near instant availability of funds for transfers made with Zelle is one of Early Warning's major selling points and is broadly advertised on its website and elsewhere, stating that, "Money sent with Zelle® is typically available to an enrolled recipient within minutes. *If it has been more than three days*, we recommend confirming that you have fully enrolled your Zelle® profile, and that you entered the correct email address or U.S. mobile number and provided this to the sender."

---

[2] https://www.experian.com/blogs/ask-experian/heres-what-you-need-to-know-about-zelle-the-mobile-payment-app-that-rivals-venmo/ (last accessed Jan. 18, 2023).

[3] https://www.charlotteobserver.com/news/business/banking/article271322642.html (last accessed Jan. 18, 2023).

[4] https://www.experian.com/blogs/ask-experian/heres-what-you-need-to-know-about-zelle-the-mobile-payment-app-that-rivals-venmo/.

[5] https://www.charlotteobserver.com/news/business/banking/article271322642.html.

[6] https://www.experian.com/blogs/ask-experian/heres-what-you-need-to-know-about-zelle-the-mobile-payment-app-that-rivals-venmo/.

[7] https://www.zellepay.com/faq/someone-sent-me-money-zelle-how-do-i-receive-it (last accessed Jan. 18, 2023).

19. For people living paycheck to paycheck (like most of Americans)[8], the availability of funds—let alone the immediacy of that availability—is essential to meeting their financial needs.

## THE SERVICE MALFUNCTION

20. Without warning, on the morning of January 18, 2023, Zelle customers who banked with Bank of America began noticing that funds that had been previously deposited in their Bank of America accounts (days prior for some) had been unexpectedly reversed.

21. Upon information and belief, the Service Malfunction only affected Zelle customers who banked with Bank of America.

22. Numerous customers began complaining of missing funds and unexpected negative balances due to the problems with the digital payment network.[9]

23. Many took to Twitter to air their grievances stating. One user posted, "So cool how @BankofAmerica magically disappeared a large Zelle transaction that HAD ALREADY POSTED and I had used to pay bills. Now I'm extremely in debt in my checking and I can't get ahold of them. Unbelievable."[10]

24. Another Zelle and Bank of America customer posted, "I woke up this morning to a negative balance. There is no way to speak to a customer service agent…. This problem needs to be fixed immediately so (I) can have access to my funds!"[11]

25. Other users complained that funds that they had sent to other users via Zelle had been incorrectly returned to them causing them to mistakenly believe they had money available in their account before later seeing that same amount reversed and their accounts taking on a

---

[8] https://www.cnbc.com/2022/12/15/amid-high-inflation-63percent-of-americans-are-living-paycheck-to-paycheck.html#:~:text=As%20of%20November%2C%2063%25%20of,are%20under%20pressure%2C%20LendingClub%20found (last accessed Jan. 18, 2023).

[9] https://www.charlotteobserver.com/news/business/banking/article271322642.html.

[10] https://twitter.com/briannaleopard/status/1615727266520272896 (last accessed Jan. 18, 2023).

[11] https://www.charlotteobserver.com/news/business/banking/article271322642.html.

negative balance after spending said amounts. One user stated who experienced this issue spoke of the negative effects stating, "(But) unfortunately 3 payments that went out yesterday after Zelle was in there (Car Payment, Car Insurance and Cell phone/Internet) all have been returned…. This is not good. Now I have to call all these places and explain."[12]

26. During Defendants' Service Malfunction, consumers did not have access to their funds, causing immense hardship, including the inability to pay for basic necessities such as food, rent, electricity, gas and medicine. Consumers were unable to pay their household bills, resulting in the assessment of late fees.

27. Unfortunately, even after funds were returned, the negative effects of Defendants' Service Malfunction remained: consumers (the large majority of whom live paycheck-to-paycheck) were left with damages including overdraft fees, late fees, and extreme anxiety and stress as to whether they would be able to meet their financial obligations.

28. Rather than contacting its customers directly, Bank of America made a public posting misrepresenting the Service Malfunction as a mere delay, "Zelle transactions made between January 14th and January 17th may be delayed in occurring and posting to accounts as requested…. Transfers will be completed and will appear in your account activity and balances as soon as possible."

29. Zelle has yet to comment on the Service Malfunction. Its silence speaks volumes.

30. As evidenced by the Service Malfunction and Defendants' refusal to provide an explanation for (or even an accurate description of) it, Defendants have failed to meet their duties to their customers who relied upon Defendants to ensure the availability of their funds and the accuracy of their account statements.

31. As a direct and proximate result of the actions described above, Plaintiff and Members of the Class have been damaged.

## PLAINTIFF LEZCANO

---

[12] *Id.*

32. Plaintiff Lezcano is a customer of Early Warnings and Bank of America.

33. On the morning of January 18, 2023, Plaintiff Lezcano reviewed her checking account balance with Bank of America, which displayed a positive balance. Plaintiff Lezcano, moments later, used part of that positive balance to make a phone bill payment. When Plaintiff Lezcano reviewed her balance less than thirty minutes later, she noticed that her balance had unexpectedly become negative. This was unexpected as the amount the Plaintiff Lezcano had spent on her phone bill payment was less than the positive balance that her account had just displayed; accordingly, Plaintiff Lezcano was shocked and disturbed to find that her checking account's balance had become negative.

34. Plaintiff Lezcano later learned that two payments she had received days earlier via Zelle and a payment she had made days earlier via Zelle were all reversed causing confusion as to the actual status and balance of her checking account and ultimately causing her checking account's balance to become negative.

35. As a result of this negative balance, specifically, and the Service Malfunction, in general, Plaintiff Lezcano had to cancel her car's service appointment and was caused great anxiety and stress as to her ability to meet her immediate financial obligations.

36. As a result of this negative balance, specifically, and the Service Malfunction, in general, Plaintiff Lezcano had to spend several hours attempting to mitigate the effects of the Service Malfunction, including reviewing her accounts, unsuccessfully attempting to contact Bank of America, and reviewing publications for news as to the cause of the Service Malfunction as she was unable to get any information regarding it from Bank of America or Zelle.

37. The Service Malfunction also prevented or delayed Plaintiff Lezcano from: (1) purchasing groceries, (2) paying a friend to whom she owed money, and (3) servicing her car.

38. In addition to causing hardship and financial damage, the Service Disruption required Plaintiff Lezcano to spend valuable time dealing with the myriad of issues caused by not having access to her funds – time which she would not have otherwise had to spend but for the Service Malfunction.

**INAPPLICABLE OR UNENFORCEABLE ARBITRATION & CLASS ACTION WAIVER CLAUSE**

39. Section 26 of Zelle's User Service Agreement purports to require that certain disputes be individually arbitrated. Section 26 is unenforceable because it is substantively and procedurally unconscionable and/or is against public policy.[13]

40. To the extent that Defendant Early Warning asserts that the claims of Plaintiff and Class members are subject to an arbitration agreement or a class action waiver, Plaintiff and the Class seek declaratory relief in the form of a finding that such a purported arbitration agreement is void and unenforceable.

41. Plaintiff and Class Members were fraudulently induced into banking with Early Warning because they were led to believe their funds would be properly transferred and they would have unhindered access to these monies.

42. The terms of Zelle's User Service Agreement's arbitration provision, waiver of class action rights and right to trial by jury are unconscionable and Plaintiff and Class Members would not have agreed to those terms or have established accounts with Early Warning or Zelle had they known about the fraudulent, unlawful and unfair activity, misrepresentations, and negligence as described in this Complaint.[14]

---

[13] https://www.zellepay.com/legal/user-service-agreement (last accessed Ja. 18, 2023).

[14] Plaintiff reserves the right to assert this claim as to any of Defendants' terms of service which contain an arbitration clause and/or class action waiver provision.

## CLASS ACTION ALLEGATIONS

43. Plaintiff bring this suit as a class action individually and on behalf of all others similarly situated pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure. Plaintiff seek certification of a Nationwide and state Sub classes defined as follows:

> All Zelle customers residing in the United States whose funds were affected by the Service Malfunction occurring January 18, 2023.

44. Excluded from the Classes are the officers, directors, and legal representatives of Defendants, and the judges and court personnel in this case and any Members of their immediate families.

45. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The Class Members are so numerous that joinder of all Members is impractical. While the exact number of Class Members is unknown to Plaintiff at this time, upon information and belief, Plaintiff expects the Class size to consist of millions of members.

46. <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

  a. whether Defendants owed duties to Plaintiff and the proposed class, the scope of those duties and if they breached those duties;

  b. whether Defendants' conduct was unfair or unlawful;

  c. whether Defendants breached their contracts with Plaintiff and the proposed class;

  d. whether the arbitration and class action waiver provisions of Zelle's User Service Agreement are unconscionable, illusory, fraudulent or otherwise invalid;

    e.  whether Plaintiff and the Class have sustained damages as a result of Defendants' conduct alleged herein and, if so, what is the proper measure of such damages; and

    f.  whether Plaintiff and the Class are entitled to declaratory and injunctive relief.

47.    <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those of other Class Members because Plaintiff's account was affected by the Service Malfunction like every other Class Member. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Members of the Class were injured through the common misconduct of Defendants. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

48.    <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages he has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

49.    <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). The class litigation is an appropriate method for the fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary

duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

50. The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

51. The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

52. Adequate notice can be given to Class Members directly using information maintained in Defendant' records.

53. Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

54. Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully as set forth in this Complaint.

55. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## **COUNT I - NEGLIGENCE**

56. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

57. Defendants owed duties to Plaintiff and the proposed Class, as Zelle account holders and paying customers, to use reasonable care to protect and secure customer funds and provide access to those monies.

58. Defendants had full knowledge of the types of harm that Plaintiff and Class Members could and would suffer as a result of an event like the Service Malfunction.

59. Defendants had full knowledge of the types of harm that Plaintiff and Class Members could and would suffer if funds were not properly transferred.

60. Defendants had full knowledge of the types of harm that Plaintiff and Class Members could and would suffer if they were denied access to the monies in their account.

61. Defendants breached their duties to Plaintiff and Class Members by failing to

prevent the Service Malfunction.

62. Defendants breached their duties to Plaintiff and Class Members by failing to maintain the integrity of customer accounts during the Service Malfunction resulting in various charges, inaccurate balance statements, and stress and anxiety for Plaintiff and Class Members.

63. Defendants failed to use reasonable care in communicating information about the Service Malfunction and the security and integrity of account funds.

64. Plaintiff and the proposed Class justifiably relied upon the information supplied and representations made by Defendants, and, as a result, engaged in business with Defendants and suffered damages and lost money.

65. But for Defendants' negligence and the Service Malfunction, Plaintiff and the proposed Class would not have suffered the damages alleged herein.

66. As a direct and proximate result of Defendants' negligence, Plaintiff and the proposed Class were damaged in an amount to be proven at trial.

## COUNT II – UNJUST ENRICHMENT

67. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

68. Plaintiff and the proposed Class have conferred a benefit upon Defendants by depositing monies into and transferring funds through Defendants' services; as a result of the Service Malfunction, Defendants did not perform as promised and/or their services did not have the attributes and benefits promised by Defendants.

69. By their unfair, misleading, and unlawful conduct alleged herein, Defendants have

unjustly received and retained benefits at the expense of Plaintiff and the proposed Class, including funds that Plaintiff and the proposed Class paid to Defendants and funds deposited into and transferred through Defendants' services.

70. Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiff and the proposed Class that they unjustly received as result of its unfair, misleading, and unlawful conduct alleged herein without providing compensation to Plaintiff and the proposed Class.

71. Plaintiff and the proposed Class have suffered financial loss as a direct result of Defendants' conduct.

72. Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants, and for such other relief that this Court deems proper, as a result of their unfair, misleading and unlawful conduct.

## **COUNT III – BREACH OF CONTRACT**

73. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

74. Plaintiff, and each member of the proposed Class, formed a contract with Defendants at the time they deposited monies into and transferred funds through Defendants' services. The terms of that contract include the promises and affirmations of fact made by Defendants through their marketing materials and statements which constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract

between Plaintiff and the members of the proposed Class on the one hand, and Defendants on the other.

75. In exchange for Defendants' assurance to Plaintiff and Class Members that they would have access to their financial accounts which would be maintained securely and accurately Plaintiff and Class Members funded their accounts and utilized banking services which generated revenue for Defendants.

76. Plaintiff and Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed.

77. Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the proposed Class by not providing a product and service which provided the promised benefits as described above.

78. As a result of Defendants' breach of its contract and warranties, Plaintiff and the proposed Class have been damaged in an amount to be proven at trial.

## COUNT IV – CONVERSION

79. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

80. Plaintiff, and each member of the Class, deposited monies into and transferred funds through Defendants' services.

81. Defendants knowingly and intentionally exercised control over the monies belonging to Plaintiff and Class members, restraining funds and denying Plaintiff and Class members access to their funds.

82. Because of the unlawful restraint imposed by Defendants, the rights of Plaintiff and the Class members in their funds were interfered with and their funds could not be used in the matter in which they desired.

83. As a result of the foregoing actions of Defendants, Plaintiff and the proposed Class have been damaged in an amount to be proven at trial.

## COUNT V – BREACH OF FIDUCIARY DUTY

84. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 55 as though fully set forth herein.

85. Defendants owed a fiduciary duty to Plaintiff and Class members to properly protect, secure, transfer, and retain all monies that lawfully belonged to them.

86. As alleged herein, Defendants breached those fiduciary duties by failing to prevent the Service Malfunction.

87. Defendants breached those fiduciary duties by denying Plaintiff and Class members access to the funds that lawfully belonged to them.

88. Defendants breached those fiduciary duties by failing to properly protect, secure, transfer, and retain all monies that lawfully belonged to Plaintiff and Class members.

89. As a result of the foregoing actions of Defendants, Plaintiff and the proposed Class have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a. For an Order certifying the Class as defined herein, and appointing Plaintiff and their Counsel to represent the Class;

b. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein;

c. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

d. For an award of punitive damages;

e. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f. For prejudgment interest on all amounts awarded; and

g. Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

January 18, 2023.

Respectfully submitted,

*/s/ John A. Yanchunis*
John A. Yanchunis*
JYanchunis@forthepeople.com
Ra O. Amen*
RAmen@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 North Franklin Street 7th Floor
Tampa, Florida 33602
T: (813) 223-5505

F: (813) 223-5402

Krystal Flores
KFlores@forthepeople.com
Arizona State Bar No. 034911
**MORGAN & MORGAN**
2355 East Camelback Road, Suite 335
Phoenix, Arizona 85016
T: (602) 735-0248
F: (602) 735-0274

*Counsel for Plaintiff and the Putative Classes*

*\* Pro Hac Vice application to be submitted*

Case No.     18     CLASS ACTION COMPLAINT